# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| CLOUD CONTROLS LLC,<br>　　　　　　*Plaintiff,*<br><br>vs.<br><br>T-MOBILE USA, INC.,<br>　　　　　　*Defendant.* | Case No. 2:25-cv-01248-JRG-RSP<br>　　　　**(Lead Case)**<br><br>**JURY TRIAL DEMANDED** |
| CLOUD CONTROLS LLC,<br>　　　　　　*Plaintiff,*<br><br>vs.<br><br>AT&T ENTERPRISES, LLC, AT&T<br>MOBILITY LLC, AT&T<br>MOBILITY II LLC, and AT&T<br>SERVICES, INC.,<br>　　　　　　*Defendants.* | Case No. 2:25-cv-01246-JRG-RSP<br>　　　　**(Member Case)**<br><br>**JURY TRIAL DEMANDED** |
| CLOUD CONTROLS LLC,<br>　　　　　　*Plaintiff,*<br><br>vs.<br><br>CELLCO PARTNERSHIP d/b/a<br>VERIZON WIRELESS,<br>　　　　　　*Defendants.* | Case No. 2:24-cv-01249-JRG-RSP<br>　　　　**(Member Case)**<br><br>**JURY TRIAL DEMANDED** |

## CONSOLIDATED DEFENDANTS' MOTION TO SEVER AND STAY CLAIMS REGARDING THE ACCUSED APPLE PRODUCTS

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................1

II.    FACTUAL BACKGROUND..............................................................................2

    A.    Cloud Controls Identified Apple as the Appropriate Party Against Which to Pursue its Claims Concerning the Asserted Patents. ...........................................2

    B.    Instead of Suing Apple, Cloud Controls Accused Defendants—Mere Resellers—of Infringement.................................................................................3

    C.    Apple, the Manufacturer of the Accused Apple Products, Filed a Declaratory Judgment Action Against Cloud Controls on All Asserted Patents. .........................................................................................................4

III.    LEGAL STANDARD..........................................................................................5

    A.    Rule 21 Authorizes Severance Under the Customer-Suit Exception.......................5

    B.    A Stay May Be Granted Pursuant to Either the Customer-Suit Exception or the Traditional Stay Factors.................................................................................6

IV.    ARGUMENT........................................................................................................7

    A.    The Case Should Be Severed and Stayed as to the Accused Apple Products Under the Customer-Suit Exception. .........................................................7

        1.    Defendants are Mere Resellers of the Accused Apple Products..................8

        2.    Defendants Agree to be Bound by the Manufacturer Suit as to the Accused Apple Products. ............................................................................10

        3.    Apple is the Only Source of the Accused Apple Products. .......................10

    B.    The Traditional Stay Factors Also Warrant Severance and a Stay as to the Accused Apple Products. .........................................................................11

        1.    Plaintiff Will Not be Unduly Prejudiced by Severance and a Stay as to the Accused Apple Products................................................................11

        2.    Severance and a Stay as to the Accused Apple Products Will Simplify or Eliminate Issues................................................................................12

        3.    The Customer Suit is in its Infancy............................................................14

V.    CONCLUSION...................................................................................................15

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Red River Waterway Comm'n*, 231 F.3d 211 (5th Cir. 2000) ....................................5

*Collaborative Agreements, LLC. v. Adobe Sys., Inc.*, No. 1-14-CV-356, 2015 WL 10818739 (W.D. Tex. Aug. 21, 2015) .......................................................................9

*CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018) ........................................................................ 6-7, 11, 13

*Dali Wireless, Inc. v. AT&T Corp.*, No. 2:22-CV-0012-RWS-RSP, 2023 WL 2898423 (E.D. Tex. Apr. 8, 2023) ........................................................................5

*DoDots Licensing Sols. LLC v. Samsung Elecs. Co.*, No. 22-535, 2023 WL 4687930 (W.D. Tex. July 20, 2023) .......................................................................13

*Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851 (Fed. Cir. 2006) ..................................................10

*GreatGigz Sols., LLC v. Costco Wholesale Corp.*, No. 6-21-CV-00807, 2022 WL 1037114 (W.D. Tex. Apr. 6, 2022).......................................................................13

*Intellectual Ventures I LLC v. Southwest Airlines Co.*, No. 3:25-CV-2885-L-BN, 2026 WL 682670 (N.D. Tex. Mar. 10, 2026)....................................................*Passim*

*Network Sys. Techs., LLC v. Samsung Elecs., Ltd.*, No. 2:22-CV-00481-JRG, 2023 WL 7649372 (E.D. Tex. Nov. 14, 2023) ......................................................................7

*In re Nintendo*, 756 F.3d 1363 (Fed. Cir. 2014) ....................................................*Passim*

*One-E-Way, Inc. v. Dell Techs. Inc.*, No. 1:24-cv-1558-RP, 2025 WL 3251550 (W.D. Tex. Oct. 29, 2025) ....................................................................12, 15

*Opticurrent, LLC v. Power Integrations, Inc.,* No. 2:16-CV-325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016).......................................................................5

*Richmond v. Forever Gifts, Inc.*, No. 3:14-cv-0583, 2015 WL 11120883 (N.D. Tex. Mar. 18, 2015) .......................................................................8

*Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) .......................................................................10

*SITO Mobile R&D IP, LLC v. SFA Holdings Inc.*, No. 1:23-CV-688-RP, 2024 WL 3843804 (W.D. Tex. Apr. 19, 2024), *aff'd by* No. 1:23-CV-688-RP, 2024 WL 3843784 (W.D. Tex. May 23, 2024)....................................................................8, 10

DM2\302681214.3

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

*Sonrai Memory Ltd. v. Samsung Elecs. Co.*, No. 6:21-CV-00167-ADA, 2022 WL 572301
(W.D. Tex. Feb. 24, 2022) ...................................................................................... *Passim*

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349 (Fed. Cir. 2011) ............6

*Topia Tech., Inc. v. Dropbox, Inc.*, No. 21-1373, 2022 WL 18109619 (W.D. Tex. Dec.
29, 2022) ..............................................................................................................13

**Other Authorities**

Fed. R. Civ. P. 21 ............................................................................................................5, 11

DM2\302681214.3

## I.   INTRODUCTION

Cloud Controls' claims regarding the Accused Apple Products in this case should be severed and stayed due to the customer-suit exception and traditional stay factors.

In this case, Plaintiff Cloud Controls LLC ("Cloud Controls") accuses Defendants AT&T Enterprises, LLC, AT&T Mobility LLC, AT&T Mobility II LLC, and AT&T Services, Inc. ("AT&T"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), and T-Mobile USA, Inc. ("T-Mobile") (all entities collectively, "Defendants") of infringing six Asserted Patents based on Defendants' alleged use and resale of various devices designed and manufactured by non-party Apple Inc. ("Apple"), as well as products supplied by other companies. But Defendants are merely resellers of the Accused Products in this case. They do not design or manufacture any of the Accused Products. And the Accused Apple Products—such as iPhones, iPads, Beats speakers and earphones, HomePods, and AirPods (collectively, the "Accused Apple Products")—are subject to a separate suit involving the same patents between Cloud Controls and Apple, the manufacturer of those products. *See Apple Inc. v. Cloud Controls LLC*, No. 5:26-cv-01510, Dkt. 1 (N.D. Cal. Feb. 20, 2026) (hereinafter, the "Manufacturer Suit").

The customer-suit exception is used to stay claims against the customer in precisely these situations: there are pending patent actions against both the manufacturer (Apple) and the customers (Defendants). Defendants' alleged liability with respect to the Accused Apple Products rises and falls with whether those Apple products infringe the Asserted Patents. ***Apple is the "true defendant."*** *In re Nintendo*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).

To avoid wasting both party and judicial resources, Defendants therefore respectfully request that the Court sever and stay Cloud Controls' claims as to the Accused Apple Products pending resolution of the Manufacturer Suit based upon a straightforward application of the

customer-suit exception.  The traditional stay factors likewise favor a stay as to these products, further supporting Defendants' requested relief.

## II.    FACTUAL BACKGROUND

### A.    Cloud Controls Identified Apple as the Appropriate Party Against Which to Pursue its Claims Concerning the Asserted Patents.

On December 18, 2025, prior to filing this action, Cloud Controls sent Apple a letter in which it represented that it is the "owner" of the Asserted Patents and alleged that various Accused Apple Products—including Apple's iPhones, iPads, Beats speakers and earphones, HomePods, and AirPods—infringe the Asserted Patents.  Manufacturer Suit, Dkt. 1-7.  The Asserted Patents, as characterized by Cloud Controls, are allegedly directed to various hardware and software features of consumer electronic devices, including: (1) "selective locking of user controls" ('552 Patent); (2) turning on a light based on a connection with a wireless network ('087 Patent); (3) "authenticating a user . . . based on the user's fingerprint, which is detected via an input mechanism on a power-on button" ('446 Patent); (4) "means for providing first and second audio signals at different audio volume levels" ('699 Patent); (5) "a specific method for serving data or applications from mobile devices" ('003 Patent); and (6) "a wireless mobile device capable of sending messages to another mobile device" ('703 Patent).  *See, e.g.*, Dkt. 33 ¶¶ 15, 20, 27, 31, 35, 39.

Defendants did ***not*** receive any equivalent letter from Cloud Controls before this lawsuit putting them on notice of these patents or alleged infringement.  This makes sense, given that Apple is the manufacturer of those products.  And Cloud Controls' letter to Apple—not Defendants—confirms that Cloud Controls is well aware that Apple is the entity responsible for designing the structures and functionalities that Cloud Controls accuses of infringement.

**B.** **Instead of Suing Apple, Cloud Controls Accused Defendants—Mere Resellers—of Infringement.**

Despite its allegations relating to Apple's products, Cloud Controls did not file suit against Apple. Instead, on December 23, 2025, Cloud Controls indirectly targeted Apple by filing suit against Defendants—three of Apple's main customers. *See Cloud Controls LLC v. Verizon Communications, Inc.*, No. 2:25-cv-1249 (E.D. Tex. Dec. 23, 2025); *Cloud Controls LLC v. AT&T Inc.*, No. 2:25-cv-1246 (E.D. Tex. Dec. 23, 2025); *Cloud Controls LLC v. T-Mobile USA, Inc.*, No. 2:25-cv-1248 (E.D. Tex. Dec. 23, 2025) (collectively, the "Customer Suits"). On February 24, 2026, this Court consolidated the Customer Suits (Dkt. 7), and motions to dismiss remain pending in each of the Customer Suits (Dkts. 38-40, 56, 58, 59).

Cloud Controls alleges that Defendants infringe the Asserted Patents based on Defendants' alleged use, sale, offers for sale, and importation of various products, including the Accused Apple Products. *See* Dkt. 33 ¶ 42;[1] *see also id.* ¶¶ 55–60, 91–96, 113–115, 126–131 (also alleging infringement based on routine activity tied to sales, including activation, set-up, configuration, testing, troubleshooting, demonstrating, and provision of support for the Accused Apple Products).[2] Cloud Controls attached to its complaints eleven claim charts at Exhibits G-Q—two charts for each Asserted Patent other than the '087 Patent. For each of the five Asserted Patents with two charts, Cloud Controls split its allegations into one chart directed solely toward the

---

[1] For simplicity, citations herein to Cloud Controls' Complaint are made with reference to the Second Amended Complaint filed against Verizon. (Dkt. 33.) Because Cloud Controls' infringement arguments do not target activities unique to any specific defendant, but instead target, *inter alia*, Defendants' resale and use of the Accused Apple Products, Cloud Controls' allegations and arguments are mirrored across these consolidated cases.

[2] Cloud Controls also adds a conclusory general allegation that "Defendant ***makes*** . . . the Accused Products." Dkt. 33 ¶ 5 (emphasis added); *cf. Cloud Controls LLC v. Verizon Communications, Inc.*, No. 2:25-cv-1249, Dkt. 1 ¶ 5 (E.D. Tex. Dec. 23, 2025) (alleging only that "Defendant uses, imports into the United States, sells, and/or offers for sale in the United States the Accused Products"). But Cloud Controls pleads no facts to support this new "mak[ing]" allegation.

3

Accused Apple Products (Exhibits G, J, L, N, and P) and one chart directed to the remaining Accused Products. *See,* Dkts. 33-7, 33-9, 33-10, 33-12, 33-14, 33-16. For the '087 Patent claim chart (Exhibit I), Cloud Controls' chart outlines its infringement theories for Apple's Beats products separately from all other charted products. *See* Dkt. 33-9.

Notably, Cloud Controls does not allege that Defendants design, develop, manufacture, or modify the Accused Apple Products in any way that is relevant to the claims of the Asserted Patents. Nor could it. The Accused Apple Products are designed, developed, and manufactured by Apple. *See e.g.*, Dkts. 33-7, 33-9, 33-10, 33-12, 33-14, 33-16 (citing Apple websites and manuals for support). Defendants are resellers of the Accused Apple Products and do not control the design, operation, or functionality of the accused features, including Apple's hardware, operating system, and software. *See* Declarations of Sid Sibal, Jason A. Sikes, and Brian Schmidt (filed herewith as Exhibits 1-3) at ¶¶ 2-5.

**C.      Apple, the Manufacturer of the Accused Apple Products, Filed a Declaratory Judgment Action Against Cloud Controls on All Asserted Patents.**

On February 20, 2026, Apple filed the Manufacturer Suit, seeking a declaration that none of Apple's products—defined to include all Apple products accused in the Customer Suits— infringe "***any*** claim" of any Asserted Patent under any theory.[3] Manufacturer Suit, Dkt. 1 ¶¶ 8-9 (identifying Apple products as those accused in the Customer Suits), 40-41 (alleging no infringement of "any claim" of any Asserted Patent), 42-83 (patent-specific allegations of no infringement of "any claim"), Prayer for Relief. Apple filed a First Amended Complaint on May 6, 2026 (Manufacturer Suit, Dkt. 33), and alleges that the Accused Apple Products "do not directly or indirectly infringe any claim of the [Asserted Patents], literally or under the doctrine of equivalents." *Id.*, ¶ 49. Apple also alleges that "[n]o third party infringes any claim of the

---

[3] All emphasis added unless otherwise indicated.

[Asserted Patents] by using" the Accused Apple Products. *Id.*, ¶ 50. The Manufacturer Suit will therefore resolve the issue of whether any Accused Apple Products infringe any of the Asserted Patents (including those allegedly resold, used, or imported by Defendants) and, accordingly, should proceed in lieu of this case.[4]

## III. LEGAL STANDARD

This Court has broad discretion to sever and stay patent actions pursuant to Federal Rule of Civil Procedure ("Rule") 21, the customer-suit exception, and the traditional stay factors. *Dali Wireless, Inc. v. AT&T Corp.*, No. 2:22-CV-0012-RWS-RSP, 2023 WL 2898423, at *1 (E.D. Tex. Apr. 8, 2023); *Sonrai Memory Ltd. v. Samsung Elecs. Co.*, No. 6:21-CV-00167-ADA, 2022 WL 572301, at *2 (W.D. Tex. Feb. 24, 2022) (citing *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000)); *Intellectual Ventures I LLC v. Southwest Airlines Co.*, No. 3:25-CV-2885-L-BN, 2026 WL 682670, at *2 (N.D. Tex. Mar. 10, 2026).

### A. Rule 21 Authorizes Severance Under the Customer-Suit Exception.

Rule 21 permits a court to "sever any claim against a party." Fed. R. Civ. P. 21. "Courts have long recognized that Rule 21 authorizes the severance of any claim, even without a finding of improper joinder, when there are sufficient other reasons for ordering a severance." *Opticurrent, LLC v. Power Integrations, Inc.,* No. 2:16-CV-325-JRG, 2016 WL 9275395, at *4 (E.D. Tex. Oct. 19, 2016) (citations omitted). Moreover, the Federal Circuit and courts in this District have adopted the customer-suit exception "as a basis for severing a claim for patent infringement brought against the customer of the 'true defendant.'" *Id.* at *4 (E.D. Tex. Oct. 19, 2016) (citing *In re Nintendo*, 756 F.3d 1363, 1365 (Fed. Cir. 2014)).

---

[4] Cloud Controls filed a renewed motion to dismiss the Manufacturer Suit based on a purported lack of personal jurisdiction (Manufacturer Suit, Dkt. 38)—despite that Cloud Controls knowingly accused California-based Apple of infringing the Asserted Patents in pre-suit correspondence and in the Customer Suits. Apple is opposing Cloud Controls' motion to dismiss.

Indeed, courts routinely sever from one action claims stayed under the customer suit exception while allowing the remaining claims to proceed. *E.g. Sonrai Memory Ltd. v. Samsung Elecs. Co., Ltd.*, No. 6:21-cv-00169, 2022 WL 572301 (W.D. Tex. Feb. 24, 2022). When a plaintiff accuses a defendant of infringing a patent for using a manufacturer's product along with other products, a court "can sever and stay the claims directed to the" manufacturer's product from the case because a final adjudication against the manufacturer will resolve those issues. *Id.* at *4. The smaller subset of claims that cannot be resolved in the manufacturer case "will otherwise proceed" in the original action. *Id*.

**B.      A Stay May Be Granted Pursuant to Either the Customer-Suit Exception or the Traditional Stay Factors.**

The customer-suit exception recognizes that when, as here, there are patent actions pending against both a manufacturer and a customer of that manufacturer, "the action against the customer[] should be stayed pending resolution of the case against the manufacturer to promote judicial economy." *Sonrai*, 2022 WL 572301, at *2 (citing *Nintendo*, 756 F.3d at 1365-66); *see also Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). Courts consider three factors when determining whether the customer-suit exception applies: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 WL 4002776, at *5 (E.D. Tex. Aug. 22, 2018). "[T]he case involving the manufacturer need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Sonrai*, 2022 WL 572301, at *2 (citations and quotation marks omitted).

6

In addition and in the alternative, the traditional stay factors—"(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set"—can also support staying a customer suit. *CyWee*, 2018 WL 4002776, at *3.

## IV.    ARGUMENT

This case presents a textbook application of the customer-suit exception to sever and stay as to the Accused Apple Products. Cloud Controls does not plead any independent theory under which Defendants could be liable for infringement for the Accused Apple Products if Apple is not also liable for infringement. Additionally or alternatively, the Court should stay Cloud Controls' claims regarding the Accused Apple Products pending their resolution in the Manufacturer Suit under the traditional stay factors.

### A.    The Case Should Be Severed and Stayed as to the Accused Apple Products Under the Customer-Suit Exception.

In evaluating the customer-suit exception, "the Court does not apply the factors in a mechanical or precise manner and instead adopts a flexible approach in order to assess whether judicial resources will be saved." *Network Sys. Techs., LLC v. Samsung Elecs., Ltd.*, No. 2:22-CV-00481-JRG, 2023 WL 7649372, at *2 (E.D. Tex. Nov. 14, 2023) (internal quotations omitted). The "flexible approach" allows the Court to avoid wasting resources and prioritize efficiency and judicial economy. *Network Sys.*, 2023 WL 7649372, at *2 (internal quotations omitted). Under this flexible approach, there are at least three strong reasons for severing and staying: (1) Defendants are mere resellers of the Accused Apple Products; (2) Defendants agree to be bound by any future infringement finding against Apple in the Manufacturer Suit; and (3) there are no

other parties that make the Accused Apple Products—in other words, Apple is the only source of these products.

### 1. Defendants are Mere Resellers of the Accused Apple Products.

Cloud Controls' infringement allegations against Defendants as to the Accused Apple Products are entirely predicated upon infringement by manufacturer Apple. When a manufacturer's "liability . . . is predicate to recovery from any of the [customer] defendants, the case against [the manufacturer] must proceed first." *Nintendo*, 756 F.3d at 1366. "Courts in the Fifth Circuit have consistently found that the first customer-suit exception factor weighs in favor of a stay where a customer-defendant is accused of merely ***using, operating, or promoting*** an accused product that had been developed and supplied by a third-party." *SITO Mobile R&D IP, LLC v. SFA Holdings Inc.*, No. 1:23-CV-688-RP, 2024 WL 3843804, at *3 (W.D. Tex. Apr. 19, 2024), *aff'd by* No. 1:23-CV-688-RP, 2024 WL 3843784 (W.D. Tex. May 23, 2024).

That is precisely the case here. Cloud Controls alleges that Defendants use, sell, offer for sale, and/or import the Accused Apple Products, including through, for example, routine device setup, configuration, testing, and customer support activities. *See, e.g.*, Dkt. 33 ¶¶ 42, 55–60, 91–96, 113–115, 126–131. Critically, however, Cloud Controls fails to allege that Defendants design, develop, or manufacture any allegedly infringing aspect of the Accused Apple Products. That is unsurprising because none of the accused features and functionalities of the Accused Apple Products are designed, developed, or manufactured by Defendants. Exhs. 1-3, ¶¶ 2, 4, 5. A stay is favored when the customer-defendant has "no involvement in and no essential knowledge about the alleged infringement, which begins at the design and manufacture phases." *Richmond v. Forever Gifts, Inc.*, No. 3:14-cv-0583, 2015 WL 11120883, at *1 (N.D. Tex. Mar. 18, 2015).

Cloud Controls likewise does not allege that any software developed by Defendants infringes the Asserted Patents. Instead, Cloud Controls advances infringement allegations entirely

8

based on the structure and functionality of Apple's hardware and software. *See, e.g.*, Cloud Controls' claim charts regarding Accused Apple Products (Exhibits G, I, J, L, N, and P (Dkts. 33-7, 33-9, 33-10, 33-12, 33-14, 33-16)). Cloud Controls' allegations regarding Defendants' alleged use and resale of the Accused Apple Products therefore "rise and fall with the question of whether [the Accused Apple Products are] found to infringe the claims of the patent[s]." *Collaborative Agreements, LLC. v. Adobe Sys., Inc.*, No. 1-14-CV-356, 2015 WL 10818739, at *2 (W.D. Tex. Aug. 21, 2015); *see also Intellectual Ventures I*, 2026 WL 682670, at *5 (finding this factor favors a stay where the manufacturers—who provided "all of the hardware and software" for the accused products—had parallel declaratory judgment actions involving those products and the same patents).

The asserted method claims do not create any independent basis to proceed against Defendants instead of Apple.[5] Cloud Controls does not plead that Defendants perform a method unique to Defendants' position in the supply chain; rather, Cloud Controls accuses Defendants of infringement in the same way that ***any*** user—Apple included—would allegedly infringe. *See* Dkts. 33-7, 33-10, 33-14, 33-16. In other words, Cloud Controls' allegations against Defendants are entirely derivative of Apple's conduct and apply to any user's potential use of Accused Apple Products, so issues of infringement as they relate to the Accused Apple Products are common to Defendants and Apple. *Nintendo*, 756 F.3d at 1366. If Apple's use, promotion, sale, or manufacture of the Accused Apple Products does not infringe, then Defendants' use, promotion, or sale of those same products cannot infringe. Thus, a resolution of the Manufacturer Suit would resolve Cloud Controls' claims against Defendants as to the Accused Apple Products, including the asserted method claims. Apple is the "true defendant" here. *Nintendo*, 756 F.3d at 1365.

---

[5] Only the '552, '003, '446, and '703 Patents include asserted method claims.

9

Moreover, Cloud Controls can recover damages only once for each accused product, so it makes sense for Cloud Controls' claims against the manufacturer, Apple, to go forward, as the resolution of that case will impact all Accused Apple Products and not just the portion of those products supplied to Defendants. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006); *Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, *3 (E.D. Tex. Mar. 18, 2010).

Accordingly, this factor favors severance and a stay under the customer-suit exception.

### 2. Defendants Agree to be Bound by the Manufacturer Suit as to the Accused Apple Products.

Defendants agree to be bound by any final judgment of infringement or noninfringement as to the Accused Apple Products. This commitment eliminates the risk of duplicative litigation or inconsistent judgments and ensures that Cloud Controls will receive the full benefit of any favorable ruling in the Manufacturer Suit. This factor thus favors severance and a stay under the customer-suit exception. *See Intellectual Ventures I*, 2026 WL 682670, at *5; *SITO Mobile*, 2024 WL 3843804, at *3.

### 3. Apple is the Only Source of the Accused Apple Products.

Apple is the only source of the Accused Apple Products—no one else designs and makes Apple products. Defendants receive the Accused Apple Products from Apple for the purpose of reselling those products to end-users. Exhs. 1-3, ¶ 3. Defendants do not design or manufacture the Accused Apple Products. *Id.*, ¶¶2, 5. Moreover, Defendants do not modify the accused functionality. *Id.*, ¶ 4.

Accordingly, severance of Cloud Controls' allegations relating to the Accused Apple Products, combined with a stay of those allegations, is warranted. *See Sonrai*, 2022 WL 572301, at *4. Severance would remedy any concerns about Cloud Controls' allegations relating to non-

Apple products, and it would also serve the interests of judicial economy by allowing a single suit to proceed as to the Accused Apple Products. *See id*.

********

Accordingly, the facts strongly favor severing and staying this case under the customer suit exception as to the Accused Apple Products.

### B.     The Traditional Stay Factors Also Warrant Severance and a Stay as to the Accused Apple Products.

In addition and in the alternative, Rule 21 and all three traditional stay factors support severing and staying Cloud Controls' claims as to the Accused Apple Products.

### 1.     Plaintiff Will Not be Unduly Prejudiced by Severance and a Stay as to the Accused Apple Products.

Cloud Controls will not suffer any undue prejudice from severance and a stay of its allegations concerning the Accused Apple Products. *First*, Cloud Controls will not be unduly prejudiced by any delay from the requested stay. The Manufacturer Suit was initiated less than two months after Cloud Controls filed the instant action, the Northern District of California's average time to trial is not significantly longer than this District's (*see* https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/c-5), and because of the requested severance, a stay would not affect Cloud Controls' remaining claims against Defendants. Moreover, delay is "present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion." *CyWee*, 2018 WL 4002776, at *3; *see also Intellectual Ventures I*, 2026 WL 682670, at *5.

*Second*, any potential delay was caused by Cloud Controls' failure to timely bring this action. By the time Cloud Controls filed suit, the Asserted Patents had existed for between seven and eighteen years (*see* Dkt. 33 ¶¶ 14, 19, 26, 30, 34, 38) and the Accused Apple Products had, in some instances, existed for over a decade. *See, e.g.*, Manufacturer Suit, Dkt. 33 ¶ 46 (explaining

11

that the iPhone launched in 2007, the iPad launched in 2010, and AirPods launched in 2016). Critically, four of the six Asserted Patents *expired before Cloud Controls even brought this action*. Dkt. 33 ¶¶ 26, 30, 34, 38. Thus, Cloud Controls' own delay in asserting the Asserted Patents—despite their age and the long-standing availability of the Accused Apple Products—further undermines any claim of urgency. In this context, any incremental delay resulting from a stay is negligible and cannot constitute undue prejudice.

*Third*, Cloud Controls does not seek injunctive relief; it seeks only monetary damages to remedy the alleged infringement. *See* Dkt. 33 (Prayer for Relief). A several month delay would not cause undue prejudice. *See One-E-Way, Inc. v. Dell Techs. Inc.*, No. 1:24-cv-1558-RP, 2025 WL 3251550, at *3 (W.D. Tex. Oct. 29, 2025) (finding no undue prejudice when the asserted patents were expired and the plaintiff sought only monetary damages).

*Fourth*, because Defendants have agreed to be bound by an infringement finding against Apple as applied to the Accused Apple Products, "[t]here is no clear tactical advantage for [Defendants] in severing and staying the case." *Intellectual Ventures I*, 2026 WL 682670, at *8 (citations and quotation marks omitted). Thus, there is no benefit to Defendants that could unduly prejudice Cloud Controls.

Accordingly, the undue-prejudice factor favors severance and a stay.

### 2. Severance and a Stay as to the Accused Apple Products Will Simplify or Eliminate Issues.

Severance and a stay will significantly simplify this case by, among other things, streamlining discovery and conserving judicial resources, because resolution of the Manufacturer Suit will resolve all issues relating to the alleged infringement of the Accused Apple Products.

*First*, severing and staying Cloud Controls' claims against the Accused Apple Products pending resolution of the Manufacturer Suit will simplify or eliminate those claims. As discussed

above, the Manufacturer Suit will resolve common questions of alleged infringement concerning the Accused Apple Products as between Apple and Defendants. *See supra* Section IV.B.1; *Intellectual Ventures*, 2026 WL 682670, at *7 (finding simplification favors a stay where the accused products comprise "mostly" the manufacturer's technology and thus the manufacturer suit will lead to "resolution of the major issues"); *CyWee*, 2018 WL 4002776, at *3 (similar). Simplification is particularly likely here because Defendants "ha[ve] agreed to be bound by the infringement determination in the [Manufacturer Suit]. . . . This factor thus weighs heavily in [defendant's] favor." *CyWee*, 2018 WL 4002776, at *4.

   ***Second***, a stay will streamline discovery. Because Apple—and not Defendants—designs, develops, and manufactures the Accused Apple Products, the relevant technical evidence and witnesses relating to design, structure, and operation of the Accused Apple Products are in Apple's possession, not Defendants'. *See generally Topia Tech., Inc. v. Dropbox, Inc.*, No. 21-1373, 2022 WL 18109619, at *5 (W.D. Tex. Dec. 29, 2022) ("[T]he customer-suit exception is premised on the principle that the bulk of the relevant evidence comes from the supplier of the accused product, not the customer."); *GreatGigz Sols., LLC v. Costco Wholesale Corp.*, No. 6-21-CV-00807, 2022 WL 1037114, at *4 (W.D. Tex. Apr. 6, 2022) (discovery "will focus largely on . . . the entity engaged in design, development, and sale of the accused products"). And although Cloud Controls "may need information from [Defendants] regarding its sales of the [Accused Apple Products], [Apple] likely possesses the relevant information." *DoDots Licensing Sols. LLC v. Samsung Elecs. Co.*, No. 22-535, 2023 WL 4687930, at *5 (W.D. Tex. July 20, 2023). Requiring Defendants to litigate these issues would therefore duplicate discovery that properly belongs in the Manufacturer Suit and impose unnecessary burdens on both the parties and the Court.

***Third***, a stay would promote judicial economy and help avoid inconsistent judgments.  In particular, severing and staying Cloud Controls' claims relating to the Accused Apple Products would avoid parallel proceedings on similar or identical issues relating to Cloud Controls' allegations of infringement by the Accused Apple Products.  *Sonrai*, 2022 WL 572301, at *4 ("A stay will also help avoid inconsistent judgments between these cases.").

***Fourth***, a stay would simplify any trial in this action and significantly reduce any potential juror confusion.  There are a variety of products implicated by Cloud Controls' infringement allegations in this case, but the Accused Apple Products (making up a significant portion of the products in the case) are a discrete and unified category—so much so that for all but one Asserted Patent, Cloud Controls separately charts its infringement theories for the Accused Apple Products.  *See, e.g.*, Dkt. 33 ¶¶ 66–68, 127; Dkts. 33-7, 33-10, 33-12, 33-14, 33-16.  Even for the sole Asserted Patent without Apple-specific infringement charts (the '087 Patent), Cloud Controls' chart outlines its infringement theories against Apple's Beats products separately from all other charted products.  *See* Dkt. 33-9.  The allegations regarding the Accused Apple Products are thus already differentiated and severable from Cloud Controls' other allegations.  Removing the Apple products from a combined trial would significantly simplify the presentation to the jury, which would already be overwhelmed with technical details concerning numerous products designed and manufactured by numerous third parties.  This would also reduce the strain on the Court and save Court resources.

Accordingly, this issue-simplification factor also favors severance and a stay.

### 3.    The Customer Suit is in its Infancy.

Plaintiff initiated this action approximately five months ago.  Minimal discovery has taken place, and the most burdensome phases of litigation—including claim construction, expert discovery, dispositive motions, and trial—remain ahead.  The *Markman* hearing in this case will

not take place for over a year.  Dkt. 65.  Courts routinely grant stays at far more advanced stages of litigation, making a stay particularly appropriate here.  *See Intellectual Ventures I*, 2026 WL 682670, at \*7 (finding this factor favored a stay when fact discovery was incomplete, a *Markman* hearing had not occurred, and a trial date had not been set); *see also One-E-Way*, 2025 WL 3251550, at \*3 (finding that, when claim construction briefing was still ongoing, fact discovery had not opened, and trial was over one year away, the "early stage" of the case favored a stay).

Accordingly, the stage-of-the-case factor also favors severance and a stay.

********

The traditional stay factors therefore strongly favor staying this case as to the Accused Apple Products.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court sever and stay Cloud Controls' claims as to the Accused Apple Products pending resolution of the Manufacturer Suit, thereby ensuring that the claims proceed against the proper party and avoiding duplicative and inefficient litigation.

Dated: June 1, 2026

Respectfully submitted,

/s/ Andrew Gish
Andrew Gish (NY Bar No. 4918454)
(admitted in the Eastern District of Texas)
**GISH PLLC**
41 Madison Avenue, Floor 31
New York, NY 10010
andrew@gishpllc.com
Telephone: (212) 518-2000

Ryan Iwashahi (CA Bar No. 284766)
(admitted in the Eastern District of Texas)
Thomas J. Pardini (CA Bar No. 313401)
(pro hac vice)
**GISH PLLC**
50 California Street, Suite 1500
San Francisco, CA 94111
ryan@gishpllc.com
Telephone: (415) 630-8960

***Counsel for Verizon Defendant***

/s/ Matthew S. Yungwirth
Matthew S. Yungwirth
msyungwirth@duanemorris.com
Sajid Saleem
ssaleem@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree St, Ste. 1700
Atlanta, GA 30309-3929
Telephone: 404.253.6900

Christopher Ricciuti
cricciuti@duanemorris.com
Elissa Sanford
esanford@duanemorris.com
**DUANE MORRIS LLP**
901 New York Avenue, Suite 700 East
Washington, D.C. 20001
Telephone: 202.776.7832

***Counsel for AT&T and T-Mobile Defendants***

16

Deron R Dacus
ddacus@dacusfirm.com
**THE DACUS FIRM, PC**
821 ESE Loop 323
Suite 430
Tyler, TX 75701
Telephone: 903.705.1117

*Counsel for Verizon and AT&T Defendants*

Melissa Richards Smith
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  903.934.8450

*Counsel for T-Mobile USA, Inc.*

17

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h)-(i), the undersigned hereby certifies that counsel met and conferred to discuss the relief requested in this Motion, and that Plaintiff opposes this Motion to Sever and Stay.

Counsel for Defendants explained over email their intent to seek to sever and stay Plaintiff's claims regarding the accused Apple products.  On May 29, 2026, the undersigned discussed the basis for Defendants' request for relief over a phone call with Plaintiff's counsel Fred Williams.  Plaintiff asked for supporting authority, which Defendants circulated to Mr. Williams by email.  Plaintiff later responded that it opposed this Motion.  These meet-and-confer discussions have ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Thomas J. Pardini*
Thomas J. Pardini

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on June 1, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Andrew Gish*
Andrew Gish

18